IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | | |
|---|---|---|
| DIANA M. JORDAN, AS WRONGFUL DEATH BENEFICIARY OF THE ESTATE OF MARQUIS ANTHONY DREW, DECEASED; | ) | Civil Action No.: 2:23-CV-00772-CBB-MRH |
| Plaintiff, | ) | Mark R. Hornak<br>United States District Judge |
| vs. | ) | |
| RYAN MCWREATH, ANTHONY E. ANDRONAS, WASHINGTON COUNTY, PENNSYLVANIA, | ) | Christopher B. Brown<br>United States Magistrate Judge |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**
**ON MOTION FOR JUDGMENT ON THE PLEADINGS ECF No. 81**

**Christopher B. Brown, United States Magistrate Judge**

## I. Recommendation

This civil action was removed to this Court from the Court of Common Pleas of Washington County, Pennsylvania on May 10, 2023. Plaintiff Diana M. Jordan, as wrongful death beneficiary of the estate of Marquis Anthony Drew ("Drew" or "Decedent"), alleges that Defendants[1] violated Decedent's civil rights, were

[1] Remaining Defendants include Ryan McWreath ("McWreath"), Anthony E. Andronas ("Andronas"), and Washington County, Pennsylvania (the "County").

negligent and caused the wrongful death of Decedent when McWreath struck Decedent with his County vehicle resulting in fatal injuries to Decedent.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Presently pending before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). ECF No. 81. The motion is fully briefed and ripe for consideration. ECF Nos. 82, 86, 87.

For the reasons that follow, it is respectfully recommended that the Court grant Defendants' motion for judgment on the pleadings in part with respect to Plaintiff's Fourteenth Amendment substantive due process claim against all remaining Defendants and decline to exercise supplemental jurisdiction over the remaining state law claims. Upon doing so, the matter should be remanded to the Court of Common Pleas of Washington County for all further proceedings.

## II. Report

### a. Background

On December 9, 2020 at approximately 7:45 p.m., Decedent was walking on the shoulder of the roadway with the flow of traffic at or near 773 Old National Pike, South Strabane Township, Washington County, Pennsylvania. ECF No. 56 at ¶¶ 29-30. At that same time, Deputy Sheriff McWreath was, within the course and scope of his employment, operating a motor vehicle owned by the County on the same roadway. *Id.* at ¶¶ 31-32. The posted speed limit was 50 mph and Plaintiff alleges McWreath was driving between 60-61 mph, holding his cellular phone and on a call with a confidential informant. *Id.* at ¶¶ 33-35. While doing so, McWreath

did not have his lights or sirens engaged and had an unobstructed view ahead of him. *Id.* at ¶¶ 36-37. Plaintiff alleges that Deputy Sheriff McWreath was not adequately paying attention, crossed the solid white fog line, and entered the shoulder of the roadway where Decedent was walking. *Id.* at ¶¶ 38-39. When McWreath did so he struck Decedent from behind and carried Decedent on his vehicle for more than one-hundred (100) feet before Decedent fell off and slid or rolled another fifty (50) feet into a ditch along the north berm of Old National Pike. *Id.* at ¶¶ 44-47. Plaintiff alleges that Decedent survived the initial collision, but eventually succumbed to his injuries in the ditch. *Id.* at ¶¶ 48-51.

After the collision, McWreath's vehicle immediately lost power and drifted to a stop several hundred feet past the impact location. *Id.* at ¶ 58. McWreath then exited his vehicle and walked back through the debris field to determine what he struck. *Id.* at ¶ 61. McWreath then observed Decedent laying on his right side in the ditch and according to Plaintiff, he did not call out to, approach, check for a pulse or render any type of aid to Decedent. *Id.* at ¶¶ 64-68. Instead, McWreath first called his supervisor to inform him of the accident. *Id.* at ¶ 69. It is alleged neither he nor his supervisor immediately called the police. *Id.* at ¶ 70. Rather, McWreath waited until 7:55 p.m., eleven (11) minutes after the accident, at which point he called the police to report the accident via the non-emergency line instead of 9-1-1. *Id.* at ¶¶ 71-72. After making that call, and prior to PSP's arrival, Plaintiff further alleges McWreath left the scene per the instructions of an unspecified supervisor. *Id.* at ¶¶ 74-75. Pennsylvania State Police ("PSP") arrived on the scene

around 8:01 p.m. to investigate the accident. *Id.* at ¶ 73. After the PSP and coroner arrived, Decedent was pronounced deceased at the scene. *Id.* at ¶ 79.

Following the accident, Plaintiff alleges the Defendants failed to independently investigate the accident. More specifically, Plaintiff alleges they did not get a statement from or interview McWreath or any eyewitnesses, they failed to have McWreath submit to any toxicology testing, they failed to perform any accident reconstruction or photograph the scene, and they failed to examine the Event Data Recorder ("EDR") of McWreath's vehicle. *Id.* at ¶¶ 82-90. Plaintiff further alleges that Defendants did not procure any investigative reports or materials from the PSP or Pennsylvania Attorney General's Office or discuss the accident with any investigating agency. *Id.* at ¶¶ 90-91. Finally, Plaintiff alleges that Defendants did not investigate whether McWreath's actions warranted employment repercussions such as suspension or termination, they did not determine whether additional training was required, and they failed to document the accident for their own records. *Id.* at ¶¶ 92-97.

### b. Standard of Review: Fed. R. Civ. P. 12(c) Judgment on the Pleadings

Fed. R. Civ. P. 12(c) provides "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are closed after an answer is filed, along with a reply to any additional claims asserted in the answer." *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 539 F. Supp. 3d 424, 428 (E.D. Pa. 2021) (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record, and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh*, 742 F. Supp. 2d at 595; *see also Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). The allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party." *Rosenau*, 539 F.3d at 221.

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman*, 873 F.3d at 417 (quoting *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010). "To state a plausible claim for relief – and to avoid a judgment on the pleadings – the non-moving party's factual allegations must 'raise a right to relief above the speculative level,' ... and must do more than 'plead[] facts that are 'merely consistent with' a defendant's liability.' " *PNC Bank, N.A. v. Axis Ins. Co.*, 720 F. Supp. 3d 367, 373

(W.D. Pa. 2024), *aff'd,* No. 24-1670, 2025 WL 880013 (3d Cir. Mar. 21, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In ascertaining whether the party moving for a judgment on the pleadings has met its burden, the Court must give the non-moving party 'the benefit of every favorable inference.' " *PNC Bank, N.A.*, 720 F. Supp. 3d at 373 (quoting *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011) (in turn quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Capitol Specialty Ins. Corp. v. W. View Apartments, Inc.*, No. 21-11675, 2021 WL 6101663, at *1 (11th Cir. Dec. 22, 2021) (per curiam) (citing *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)).

**c. Scope of the Record**

As an initial matter, the parties reference a Pennsylvania State Police report ("PSP Report") which was authored following the events of the accident. This warrants a discussion as to whether the Court can properly consider the PSP Report at this stage of the proceedings without converting the motion into one for summary judgment.

Defendants attached the Pennsylvania State Police report to their answer, refer to it in their motion for judgment on the pleadings and argue the Court should rely on its substantive factual contents – which they allege disprove Plaintiff's § 1983 claim – because the allegations in the Second Amended Complaint are based

on the PSP Report. ECF No. 82 at 3, 5, 8. Defendants maintain the PSP Report "reflects the State Police's determination that the Decedent was solely at fault, and bore sole responsibility, for the Accident, which was arrived at after performing a thorough investigation which included gathering all the physical evidence, mapping and photographing the scene, analyzing the Event Data Recorder (EDR) in McWreath's Vehicle, and conducting several eyewitness interviews." ECF No. 82 at 8 (emphasis omitted). Defendants also point to portions of the PSP Report which they claim "indisputedly(sic) confirms that the Decedent was actually walking in the roadway and . . . in McWreath's travel lane at the time of the Accident." *Id.* at 9 (emphasis omitted). Defendants also maintain the PSP Report indicates that after McWreath and a witness to the accident found Decedent in the culvert, the witness pulled back Decedent's collar and it was "readily apparent" that Decedent was dead and McWreath called 911. *Id.* at 12. Defendants further argue that the PSP Report confirms that McWreath did not flee the scene, but traveled to a nearby hospital to voluntarily provide a blood specimen for toxicology testing and for treatment to injuries he sustained during the accident. *Id.* at 12-13. Finally, Defendants maintain the accident investigation and report was carried out by the PSP rather than the County to avoid the appearance of bias or impropriety because of McWreath's status as a County law enforcement officer. *Id.* at 13. Defendants argue Plaintiff has failed to state a § 1983 claim because "each of Plaintiff's allegations pled in support of the [§] 1983 [claim] against McWreath are either

outright disproven or irreconcilably contradicted by the evidence contained in the PSP Report." *Id.*

Plaintiff responds that the Court cannot properly rely upon the PSP Report because she disputes the conclusions of the report. ECF No. 86 at 5-6. Specifically, Plaintiff argues that the physical evidence demonstrates Decedent was walking on the shoulder to the right of the fog line when McWreath crossed that line and struck him, and the PSP Report characterizes Decedent's position as "unknown." *Id.* at 6-7. She also maintains the PSP Report was not impartial because of the relationship between Washington County and the State Police. *Id.* at 7. Plaintiff maintains Defendants failed to independently investigate the accident, failed to get a statement from or interview McWreath, did not require McWreath to submit to a toxicology test, did not perform any accident reconstruction and failed to examine or download the Event Data Recorder from the County's vehicle. *Id.* at 7. Plaintiff also maintains that while McWreath underwent a toxicology test, the blood specimen was entered into evidence at the PSP and there is no preserved result because the blood sample was destroyed by the PSP months after it was collected. *Id.* at 8.

Defendants bring their motion pursuant to Fed. R. Civ. P. 12(c) and argue the contents and determinations set forth in the PSP Report demonstrates Plaintiff has failed to state a substantive due process claim. Such an argument is analyzed under the same standards that apply to a Fed. R. Civ. P. 12(b)(6) motion. *Zimmerman*, 873 F.3d at 417. When a district court rules on a motion to dismiss for failure to state a claim, it "may not consider matters extraneous to the pleadings."

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), *abrogated on other grounds by In re Ocugen, Inc. Sec. Litig.*, No. 25-2653, 2026 WL 2934862 (3d Cir. Sept. 30, 2026). If a document is attached to the motion to dismiss and is "integral to or explicitly relied upon in the complaint" it "may be considered without converting the motion to dismiss into one for summary judgment." *Id.* "But consideration only goes so far. When the truth of the facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Similarly, documents may be relevant to a plaintiff's allegations, but not integral to the claims alleged. A court is permitted to consider documents "integral to or explicitly relied upon in the complaint" to "avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "A document such as a police incident report is not integral to a Section 1983 claim . . . simply because its contents are relevant to a plaintiff's allegations." *Heller v. Hammerle*, No. 2:20-CV-01656, 2021 WL 3426807, at *4 n. 10 (W.D. Pa. June 30, 2021), *report and recommendation adopted,* No. CV 20-1656, 2021 WL 3419678 (W.D. Pa. Aug. 5, 2021).

Here, Defendants cite to the contents of the PSP Report to rebut Plaintiff's allegations in her second amended complaint – including, *inter alia,* that McWreath did not cross the fog line and drove upon the shoulder of the roadway when he hit

Decedent, ECF No. 56 at ¶ 39, McWreath did not render aid to Decedent after the accident, *id*. at ¶¶ 65-68, and McWreath called 911 rather than the non-emergency line. *Id*. at ¶ 73.

It is improper to credit the PSP Report over the allegations in the operative pleading at this procedural stage. *See Kwanzaa v. Tell*, No. 21-1939, 2022 WL 16756334, at *3 (3d Cir. Nov. 8, 2022) (finding it was error for the district court to credit the police report attached to the complaint over the allegations in the complaint when considering a motion to dismiss).[2] Although the second amended complaint references the PSP Report, that reference does not automatically render it integral to Plaintiff's claims. *See Royer*, 2023 WL 6319982, at *5. Even assuming the PSP Report is properly considered as an "integral" document, the Court cannot accept the disputed factual assertions as true where they conflict with the well-pleaded allegations of Plaintiff's second amended complaint. *Doe*, 30 F.4th at 342. Accordingly, it would be error for the Court to credit the PSP Report's depiction of the events over those allegations pleaded in the second amended complaint. Accordingly, the Court will not consider any facts contained in the PSP Report at this stage and, instead, will only consider the well-pleaded facts of the complaint in making this recommendation for judgment on the pleadings.

[2] The PSP Report likewise does not fall under the "public record" exception to properly consider on a motion to dismiss. *See Heller*, 2021 WL 3426807, at *9–10; *Royer v. Robertson*, No. 3:22-CV-00061, 2023 WL 6319982, at *5 (W.D. Pa. Sept. 28, 2023). *See also Rivera v. New Castle Cnty. Police Dep't*, 152 F.4th 147, 153 (3d Cir. 2025) (when facts contained in judicially noticed documents conflict with facts alleged in the complaint, the court must credit the facts of the complaint). Nor are the contents of the PSP Report beyond dispute given Plaintiff's response. *See Royer*, 2023 WL 6319982, at *5. Similarly, no party has asked the Court to convert the motion into one for summary judgment on this issue and this Court declines to do so.

**d. Discussion**

Defendants move for judgment on the pleadings for the remaining claims against them which include: (1) a Fourteenth Amendment substantive due process claim under 42 U.S.C. § 1983 against all Defendants (Count III); (2) a state law negligence and wrongful death claim against the County (Counts I and IV); and (3) a state law negligence and survival action against McWreath (Counts II and V).

**i. Law of the Case: Fourteenth Amendment Substantive Due Process Claim**

Defendants seek dismissal of Plaintiff's Fourteenth Amendment substantive due process claim. As an initial matter, the Court notes it previously denied Defendant's motion to dismiss on this basis. Accordingly, the Court must first address whether its prior denial precludes reconsideration of the sufficiency of Plaintiff's substantive due process claim under the law of the case doctrine. For the reasons that follow, the Court finds it does not.

In the present motion, Defendants again argue McWreath's conduct was at most negligent, and negligent or grossly negligent operation of a motor vehicle by an officer does not establish a substantive due process claim. ECF No. 82 at 5-7.[3] They further argue that McWreath's post-accident wrongdoing lacks any nexus to

[3] Defendants likewise argue that the substantive due process claim against Andronas and the County should be dismissed because Plaintiff has not adequately alleged a policy or custom that caused any constitutional violations. ECF No. 82 at 13-18. The Court has not yet made a legal determination to that effect and the law of the case doctrine does not apply to those arguments. *See* ECF No. 76 at 3, n. 1.

Decedent's death and likewise does not establish a substantive due process claim. *Id.* at 12.

Plaintiff responds that the Court previously declined to dismiss her substantive due process claims and found it was premature to make that determination as a matter of law. ECF No. 86 at 8. Defendants reply that the present motion "was invited by the Court and is not limited to the law of the case doctrine" and "the prior dismissal was procedural, not substantive [because] the Court declined to reach the merits on procedural grounds, not because Plaintiff's claims are sound." ECF No. 87 at 1.

The law of the case doctrine generally provides that when a court makes a legal determination, "that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Hasan*, 468 F. App'x 96, 98 (3d Cir. 2012) (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n. 21 (3d Cir. 2010)). The purpose of this doctrine is "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing" case. *Casey v. Planned Parenthood of Se. Pennsylvania*, 14 F.3d 848, 856 (3d Cir. 1994) (cleaned up). The doctrine applies to judges being asked to reconsider their own rulings and to successor judges who are asked to reconsider rulings of their predecessors. *MTR Gaming Grp., Inc., v. Arneault*, No. 1:11-CV-208-SPB, 2015 WL 136563, at *8 (W.D. Pa. Jan. 9, 2015) (citations omitted). Importantly, this doctrine "does not restrict a court's power but rather governs its exercise of discretion." *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 207 (3d Cir. 2010) (cleaned up). Thus, a court may revisit

a prior decision when there is new evidence available, a supervening new law, or the earlier decision was clearly erroneous and would create manifest injustice. *Schneyder v. Smith*, 653 F.3d 313, 331–32 (3d Cir. 2011). Moreover, the doctrine applies to issues previously decided and does not necessarily apply to subsequent proceedings present materially different facts or circumstances. *See e.g.*, 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2018) (when an amended complaint "contain[s] new information or different allegations making it subject to a defense or objection that was not previously apparent . . . a party may move to dismiss on the basis of the newly discovered ground even if she has filed a Rule 12 motion previously."); *Chase v. Dep't of Pub. Safety & Corr. Servs.*, No. CV ELH-18-2182, 2020 WL 1914811, at *13 (D. Md. Apr. 20, 2020) (declining to apply the law of the case doctrine to a successive motion to dismiss an amended complaint that added "clarifying detail and new factual allegations" because "different facts will lead to different legal analysis").

In their first motion to dismiss, Defendants argued Plaintiff's substantive due process claim should be dismissed because "there is no basis for a section 1983 claim where a citizen suffers a physical injury due to a police officer's negligent use of his vehicle under the substantive due process clause[.]" ECF No. 28 at 7, adopted by ECF No. 30. The Court denied Defendants' motion on this basis, finding that whether the conduct shocks the conscience as a matter of law was better determined based on a fully developed factual record. ECF No. 28 at 9-11, adopted by ECF No. 30. Plaintiff thereafter was granted leave to file a second amended

complaint, and Defendants filed a successive motion to dismiss which was denied in part for raising grounds for dismissal that were or could have been raised in the initial motion. ECF No. 76. In denying the motion, the Court did not make a substantive ruling on Plaintiff's Fourteenth Amendment claim as pleaded in the second amended complaint, and informed Defendants that they could raise these arguments through a motion under Rule 12(c). *Id.* at 3.

The amended complaint (which was the subject of the first motion to dismiss decision) alleged generally that McWreath was operating a County vehicle "at a high rate of speed" and "acting within the course and scope of his employment" when he struck Decedent. ECF No. 15 at ¶¶ 22-23. In contrast, the second amended complaint specifies that McWreath was traveling approximately 10 miles per hour above the posted speed limit while "holding his cellular phone while on a telephone call with a confidential informant" and failed to adequately pay attention to the roadway when he struck Decedent. ECF No. 56 at ¶¶ 33-38. These additional allegations materially clarify the nature and circumstances of McWreath's conduct and bear directly on whether that conduct plausibly satisfies the conscience-shocking standard required for a Fourteenth Amendment substantive due process claim under § 1983. Because the Court's earlier ruling addressed a materially different pleading, and the second amended complaint clarified McWreath's conduct, the prior ruling did not resolve the precise question now presented. Nor did the ruling denying the second-round motion to dismiss under Fed. R. Civ. P. 12(g) make a merits determination of Plaintiff's substantive due process claim as it

pertained to Defendants McWreath, Andronas and the County. Accordingly, the law of the case doctrine does not prevent the Court from evaluating the sufficiency of the second amended complaint under Fed. R. Civ. P. 12(c). The Court will therefore determine whether the facts as now alleged plausibly state a substantive due process claim against these Defendants.

#### ii. Fourteenth Amendment Substantive Due Process Claim under 42 U.S.C. § 1983 (Count III)

The Fourteenth Amendment's substantive due process clause "limits what government may do regardless of the fairness of procedures that it employs[.]" *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). A claim under the substantive due process clause arises only when a governmental employee's "conduct amounts to an abuse of official power that shocks the conscience." *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (internal quotation marks omitted)). In other words, to state a claim for substantive due process under the Fourteenth Amendment, a plaintiff must demonstrate that the government deprived her of an interest protected by the Fourteenth Amendment and such deprivation "shocks the conscience." *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015).

Here, Plaintiff asserts a substantive due process claim against each remaining Defendant –McWreath, Andronas, and the County. The claims against each of them will be addressed separately.

**1. Defendant McWreath**

Plaintiff alleges McWreath was driving "on official business" while on the phone "with a confidential informant," was driving between 60-61 miles per hour where the speed limit was posted as 50 miles per hour, "crossed the solid white fog line and entered the shoulder of the roadway," and struck and killed Decedent. ECF No. 56 at ¶¶ 31-35; 39, 44, 105. It is not alleged that McWreath was involved in the pursuit of another vehicle at the time of the accident nor is it alleged that he was responding to an emergency. It is alleged that he was simply driving a County vehicle while on official business.

While Plaintiff does not specify in her operative complaint, she appears to rely upon the state-created danger theory of liability to establish her Fourteenth Amendment substantive due process claim. This "doctrine embodies the principle that the government has an obligation under the Fourteenth Amendment's Due Process Clause 'to protect individuals against dangers that the government itself creates.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 176 (3d Cir. 2018)). For Plaintiff to state such a claim, she must plead allegations demonstrating:

> (1) [t]he harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Haberle*, 885 F.3d at 176–77 (citation omitted).

The parties take issue with the second element – whether McWreath's conduct "shocked the conscience." With respect to whether an officer's conduct shocks the conscience, there are "three distinct categories of culpability depending on how much time a police officer has to make a decision." *Sauers*, 905 F.3d at 717. The first category involves actions taken in a "hyperpressurized environment," requires the highest level of culpability and will not shock the conscience unless the officer has "an intent to cause harm." *Id.* (citations omitted). The intermediate category involves actions taken within a time frame that allows an officer to engage in "hurried deliberation," requires a lesser degree of culpability and will not shock the conscience unless the conduct "reveal[s] a conscious disregard of a great risk of serious harm." *Id.* (citations omitted). The last category involves actions taken with "unhurried judgments" in which the officer has time for "careful deliberation." *Id.* (citations omitted). This conduct requires the least degree of culpability and will shock the conscience if it is undertaken "with deliberate indifference." *Id.* (citations omitted).

That said, an officer's mere negligence cannot state a claim for a substantive due process violation because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). The Due Process Clause of

the Fourteenth Amendment and § 1983 do not turn ordinary state-law tort claims into constitutional claims simply because the conduct inflicting an injury is by a government employee. *Paul v. Davis*, 424 U.S. 693, 699 (1976). To do so would "result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983. . . . Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. . . . We do not think the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society." *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

While McWreath maintains his conduct was negligent, Plaintiff appears to argue that his conduct constitutes an "unhurried judgment" meaning it falls into the third category and thus requires a showing of deliberate indifference. ECF No. 82 at 7; ECF No. 86 at 11, 14-15. In their reply, Defendants argue even if McWreath's conduct was more than negligent, Plaintiff's allegations do not rise to the level of deliberate indifference. ECF No. 87 at 3-4.

McWreath's conduct is only actionable under the Fourteenth Amendment's Due Process clause if it is more than negligent – and here, if it constitutes deliberate indifference. Assuming the "deliberate indifference" framework applies because McWreath was not engaged in a police pursuit or responding to an emergency when the accident occurred, Plaintiff's allegations are still insufficient to

state a Fourteenth Amendment claim. The Court of Appeals for the Third Circuit has described deliberate indifference as a "conscious disregard of a substantial risk of serious harm." *Vargas*, 783 F.3d at 973–74. "The mere possibility that an injury may result from an activity does not mean that there is a 'substantial risk' of that injury occurring." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010).

The Third Circuit's decision in *Sauers* provides some context regarding the circumstances under which an officer's operation of a motor vehicle may constitute conscience-shocking conduct sufficient to establish a Fourteenth Amendment substantive due process claim. 905 F.3d 711. In *Sauers*, a police officer observed a motorist commit a minor traffic violation and initiated a pursuit despite the absence of an emergency. *Id.* at 713–14. The officer notified neighboring jurisdictions of the suspected violation and requested they stop the motorist, yet continued pursuing the vehicle at speeds exceeding 100 miles per hour. *Id.* at 714–15. The officer lost control of his vehicle while going around a curve, crossed into oncoming traffic, and collided with another vehicle, killing one occupant and seriously injuring another. *Id.* at 715. The injured motorist brought a § 1983 substantive due process claim under the state-created-danger doctrine. *Id.* at 715–16. Applying the three distinct categories of culpability for a substantive due process claim set forth above, the Third Circuit concluded the officer's conduct satisfied the intermediate culpability standard and the officer consciously disregarded a great risk of serious harm. *Id.* at 718. The court emphasized the officer had sufficient time to contemplate his actions

before initiating and continuing the pursuit as shown through his call to neighboring police officers, there was no emergency arising from a simple traffic violation and pursuing a potential summary traffic offender at speeds over 100 miles-per-hour demonstrated a conscious disregard of a great risk of serious harm. *Id.*

The allegations here are, however, materially distinct from *Sauers*. Plaintiff alleges McWreath was traveling approximately ten miles-per-hour above the posted speed limit while distracted by holding and talking on a cellphone. Although these allegations describe unsafe driving that could reasonably increase the risk of an accident, they do not, without more, support a reasonable inference that McWreath disregarded a substantial risk of serious harm. Rather, McWreath's alleged speeding and cell phone use suggest he failed to exercise reasonable care while operating his vehicle, not that he made a conscious decision to expose motorists to a substantial risk of serious harm. While the consequences of the accident are tragic, they do not transform allegedly negligent driving into a constitutional violation.

While the Court of Appeals for the Third Circuit has not addressed whether an officer's non-emergency speeding and distracted driving rise to the level of deliberate indifference, other courts have recognized this conduct, even when it results in a fatal collision, may constitute negligence without rising to the level of conscience-shocking conduct actionable under § 1983. *See Est. of Stinson v. Streicher*, No. 22-3043, 2026 WL 3070382, at *8 (7th Cir. Oct. 14, 2026) (officer was not deliberately indifferent when he took eyes off the road and looked down at his

phone or dashboard computer for approximately fifteen seconds and ran a red light, causing a fatal collision); *Lisby v. Henderson*, 74 F.4th 470, 473 (7th Cir. 2023) (officer was merely negligent and did not violate substantive due process when he was driving his police vehicle on the way to work, speeding 33 miles per hour over the speed limit, illegally changed lanes over a solid white line and crossed into the shoulder of the road striking and killing a woman and her unborn child); *Wilcox v. Fenn*, 380 F. App'x 837, 839 (11th Cir. 2010) (affirming judgment on the pleadings when officers traveling at excessive speeds during nonemergency driving caused a fatal collision). *See also Fagan*, 22 F.3d at 1327 (J. Cowen, dissenting) ("A vast difference exists between a negligent driver who happens at the same time to work for the government, and a police officer who operates a motor vehicle to catch his target with reckless disregard for human life. A reckless high-speed police pursuit is not comparable to the typical negligent automobile accident. The operation of police vehicle in a high speed car pursuit is a process of exercising governmental power. A recklessly conducted car chase involves an abuse of police power uniquely vested in the government. It is not simply a policeman travelling in a leisurely manner on the highway to go to work as would a private citizen."); *Green v. Post*, 574 F.3d 1294, 1303–04 (10th Cir. 2009) (officer speeding nineteen miles per hour above the speed limit during a non-emergency response and involved in a fatal collision constituted negligence and was not sufficient to shock the conscience under the intermediate range of constitutional culpability); *Daniels v. City of Dallas*, 272 F. App'x 321, 322 (5th Cir. 2008)–23 (5th Cir.) (unpublished per curiam), *cert. denied*, 555 U.S. 1049

(2008) (officer responding to non-emergency call at a high speed and did not engage lights or sirens was not conscience-shocking conduct under either the intent-to-harm or deliberate indifference standard); *Leddy v. Twp. of Lower Merion*, 114 F. Supp. 2d 372, 376 (E.D. Pa. 2000) (officer responding to a non-emergency call and traveling between 57 and 61 miles per hour in a 25 mile per hour zone without lights or sirens and was involved in an accident did not shock the conscience under the intermediate category); *But see Igwe v. Skaggs*, No. CV 16-1403, 2017 WL 395745, at *5 (W.D. Pa. Jan. 30, 2017) (allegations that officer voluntarily joined a high-speed pursuit, disregarded traffic signals and caused a fatal collision plausibly stated a substantive due process claim, but the officer was nevertheless entitled to qualified immunity).

In this case, while McWreath's speeding and distracted driving may support a negligence claim under state law, the second amended complaint contains no additional factual allegations permitting a reasonable inference that he consciously disregarded a substantial risk of serious harm to support a due process claim. Accordingly, the alleged conduct does not satisfy the conscience-shocking standard required by the Fourteenth Amendment's Substantive Due Process Clause. Moreover, this Court has searched and found no case which permits a substantive due process clause claim for a negligent or even grossly negligent police-vehicle accident case. "As a general matter, the [United States Supreme] Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this unchartered area are scarce and

open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Indeed, the court has only found the opposite. *See Martin v. Cumberland Bd. of Cnty. Commissioners*, No. CV233325KMWMJS, 2023 WL 4398492, at *2 (D.N.J. July 7, 2023) ("Claims premised on negligent or poor driving, or negligence related to the use of vehicles, however, fail to state a claim for relief under § 1983).[4]

Accordingly, it is respectfully recommended that the Court grant Defendants' motion for judgment on the pleadings and McWreath be entitled to judgment in his favor for Plaintiff's Fourteenth Amendment substantive due process claim.

**2. Defendant Andronas**

Plaintiff alleges Defendant Andronas violated the Fourteenth Amendment Substantive Due Process Clause because he instructed McWreath "to leave the scene before police arrival and [by] failing to conduct any investigation whatsoever into Defendant McWreath's conduct." ECF No. 86 at 16. Defendants argue these allegations lack the sufficient causal connection to Decedent's death and fail to state a claim. Defendants are correct.

---

[4] To the extent Plaintiff argues that McWreath's post-accident conduct - failure to render aid to Decedent, failure to call 911 and leaving the scene of the accident – establishes a stand-alone substantive due process claim, the second amended complaint lacks any facts establishing "the necessary causation," "plausible nexus" or "affirmative link" between this conduct and the "specific deprivation of constitutional rights at issue." *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000). It is thus recommended Defendants' motion be likewise granted in this respect.

A plaintiff alleging a § 1983 claim must demonstrate the defendant's actions were the proximate cause of the violation of his federally protected right. *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the [defendant's action] and the specific deprivation of constitutional rights at issue." *Hedges*, 204 F.3d at 121 (citations omitted). Plaintiff alleges Andronas instructed McWreath to leave the scene after the accident occurred and failed to investigate the accident. Significantly, however, Andronas's instruction to leave occurred after the collision and after Decedent sustained the injuries resulting from the impact. Similarly, Andronas's alleged failure to investigate the circumstances surrounding the accident could not have proximately caused Decedent's injuries resulting from the accident. It is not reasonable to infer that this post-accident conduct proximately caused Decedent's injuries under § 1983. *See Israel v. Smith*, No. 13CV0097PGSLHG, 2017 WL 5709559, at *4 (D.N.J. Nov. 27, 2017) (failure to conduct an investigation into excessive force use was not causally related to plaintiff's § 1983 injuries related to use of excessive force). Accordingly, it is respectfully recommended Defendants' motion for judgment on the pleadings be granted and Andronas be entitled to judgment in his favor for Plaintiff's Fourteenth Amendment substantive due process claim.

**3. Defendant County**

Plaintiff mentions several theories of municipal liability against the County. Plaintiff asserts that the County "chose to hire Defendant McWreath and allow him

to operate a County vehicle despite not having properly interviewed, vetted, or trained him" and "chose not to investigate deputy / detective related accidents and fatalities, emboldening [them] to act unreasonably, unjustifiably, and unconscionably knowing there would be no consequences for their actions." ECF No. 86 at 17-18. The Court construes Plaintiff as asserting the following theories of municipal liability: (1) failure to train; (2) failure to discipline; (3) failure to supervise; and (4) failure to properly screen during hiring. Defendants argue these claims lack facts to support them and "fail to meet the level of detail needed to support a municipal liability claim." ECF No. 82 at 17.

To plead municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must allege (1) he possessed a constitutional right of which he was deprived; (2) the County had a policy or custom; (3) the policy or custom 'amount[ed] to deliberate indifference' to that constitutional right; and (4) the policy or custom was the 'moving force behind the constitutional violation.' " *Vargas*, 783 F.3d at 974 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). The policy or custom can either be a formal policy, where a "decisionmaker with final authority 'issues an official proclamation, policy, or edict," *Williams v. Ponik*, 822 F. App'x 108, 112 (3d Cir. 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)), or an "informally adopted" custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 690). Plaintiff must show a "direct causal link" between the policy and/or custom and his "constitutional deprivation." *Kramer v.*

*City of New Kensington*, No. CIV.A. 13-606, 2015 WL 5672640, at *13 (W.D. Pa. Sept. 25, 2015) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249–50 (3d Cir. 2007)). A municipality like the County may still be liable for a substantive due process violation involving an automobile accident with a County employee even when none of the individual officers violated the Constitution. *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994).

"Failure-to" claims, like the ones asserted by Plaintiff "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Each "failure to" claims are separately addressed.

**a. Failure to Train**

For a failure to train claim under section 1983, a plaintiff must allege either a "pattern of similar constitutional violations by untrained employees" *Connick v. Thompson*, 563 U.S. 51 (2011) ("pattern" based section 1983 failure to train claim), or if no pattern is alleged, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ("single-incident" based section 1983 failure to train claim). To state a claim for either a pattern or a single-incident based section 1983 failure to train claim, the plaintiff must allege "that the deficiency in training actually caused" the constitutional violation. *Harris*,

489 U.S. at 379. Plaintiff has not alleged any pattern of similar constitutional violations related to motor vehicle accidents involving County employees and even assuming she intends to state a claim based on a "single accident" theory, she has failed to identify what training was deficient or how the accident could "have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Harris*, 489 U.S. at 391. Simply alleging that McWreath was not properly trained is insufficient to establish deliberate indifference under *Monell*. While Plaintiff responds it would be unfair to dismiss this claim because she has not had the opportunity to conduct any discovery into whether there is a pattern of similar constitutional violations, ECF No. 86 at 19, "discovery is not a cure for a deficient pleading." *Rivers v. City of Philadelphia*, No. CV 25-7288, 2026 WL 1046772, at *3 (E.D. Pa. Apr. 17, 2026) (citing *Kovalchuk v. City of Decherd, Tennessee*, 95 F.4th 1035, 1041–42 (6th Cir.), *cert. denied,* 145 S. Ct. 274 (2024)). Despite having two opportunities to amend her complaint, Plaintiff has still not identified how the training McWreath received was deficient nor has she connected it to Decedent's injuries. Accordingly, it is respectfully recommended that Defendants' motion for judgment on the pleadings be granted and the County be entitled to judgment in its favor for Plaintiff's Fourteenth Amendment substantive due process claim for failure to train.

**b. Failure to Discipline**

For a failure to discipline claim under §1983, a plaintiff must show "both contemporaneous knowledge of the offending incident or knowledge of a prior

pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). A decision not to discipline an employee for a single incident does not, without more, "communicate [ ] a message of approval." *Id.*

Plaintiff argues "[a]n institutional environment in which law enforcement officers know that accidents and fatalities will not be investigated, that no toxicology will be ordered, that no accident reconstruction will be performed, and that their supervisors will direct them away from the scene before investigators arrive is an institutional environment that communicates, through custom and practice, that misconduct carries no consequences. That institutional message, communicated before [the accident] is the moving force behind McWreath's conduct on that night." ECF No. 86 at 18.

Despite Plaintiff's characterization, these are not plausible allegations that McWreath or other County employees engaged in a pattern of **prior** similar incidents that could plausibly communicate a message of approval. The conduct that Plaintiff depicts above describes what allegedly occurred post-accident on one occasion. Accordingly, it is respectfully recommended that Defendants' motion for judgment on the pleadings be granted and the County be entitled to judgment in its favor for Plaintiff's Fourteenth Amendment substantive due process claim for failure to discipline.

**c. Failure to Supervise**

To state a claim for a failure to supervise under section 1983, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiff has again failed to identify how the County failed to supervise McWreath, what policy was employed at the time the injury occurred, what specific policy or practice the County failed to employ, how that failure created an unreasonable risk of injury or how the County was aware and indifferent to the risk and causation. Plaintiff's failure to supervise claim against the County is merely based on conclusory allegations and do not support a § 1983 claim. Accordingly, it is respectfully recommended that Defendants' motion for judgment on the pleadings be granted and the County be entitled to judgment in its favor for Plaintiff's Fourteenth Amendment substantive due process claim for failure to supervise.

**d. Failure to Properly Screen in Hiring Process**

"Under limited circumstances, courts have recognized claims for *Monell* liability based on a municipality's hiring decisions – in particular 'where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant

would be the deprivation of a third party's federally protected right[s].' " *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (quoting *Board of County Com'rs of Bryan County, Okl.*, 520 U.S. at 411). A plaintiff must allege the employee's "background was so obviously inadequate as to put [the employer] on notice of the likelihood that [a constitutional violation or] injury would result." *Robinson*, 722 F. App'x at 199 (unpublished).

The only allegations in the second amended complaint related to McWreath's hiring is that the County "chose to hire Defendant McWreath and allow him to operate a County vehicle despite not having properly interviewed, vetted, or trained him." ECF No. 86 at 17. These allegations are conclusory and provide no explanation of McWreath's background regarding the operation of vehicles or how the County was put on notice that McWreath's background would have caused a constitutional injury. In an apparent attempt to amend her pleadings through her briefing, Plaintiff points out that McWreath was convicted of a DUI in 2010 and thus the County failed to properly screen in the hiring process. ECF No. 86 at 17. Even assuming this fact was properly pleaded and that the DUI occurred prior to McWreath being hired, a single DUI occurring ten years before the accident does not by itself plausibly establish McWreath's commission of an alleged substantive due process violation related to distracted driving was a plainly obvious consequence of hiring him. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of

a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Board of County Com'rs of Bryan County, Okl.*, 520 U.S. at 411.

Accordingly, it is respectfully recommended that Defendants' motion for judgment on the pleadings be granted and the County be entitled to judgment in its favor for Plaintiff's Fourteenth Amendment substantive due process claim for failure to properly screen in the hiring process.

**iii. Remaining State Law Claims**

Because it is recommended Plaintiff's remaining federal claims be dismissed, it is likewise recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). District courts "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.' " *Barraclough v. Animal Friends, Inc.*, No. 23-3157, 2024 WL 4867068, at *3 (3d Cir. Nov. 22, 2024) (cleaned up). Because this case was removed from state court, "a remand to that court is a viable alternative to a dismissal without prejudice." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Declining supplemental jurisdiction is appropriate here because the case was initially filed in the Court of Common Pleas of Washington County, the remaining causes of action involve state-law negligence claims as well as requests for punitive damages and there are no special considerations to retain jurisdiction, especially

when no discovery has occurred in this matter. Accordingly, it is respectfully recommended that the Court decline to exercise supplemental jurisdiction over the remaining claims and remand those claims to the Court of Common Pleas of Washington County for further proceedings.

## III. Conclusion

Based on the foregoing, it is respectfully recommended that the Court grant Defendants' motion for judgment on the pleadings in part with respect to Plaintiff's Fourteenth Amendment substantive due process claim against all remaining Defendants and decline to exercise supplemental jurisdiction over the remaining state law claims and remand this case to the Court of Common Pleas of Washington County for all further proceedings.

Any party is permitted to file written specific Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and LCvR 72.D.2, the parties must file objections, if any, by **November 27, 2026**. Any party opposing the Objections shall have fourteen (14) days from the date of service of the Objections to respond thereto. See Fed. R. Civ. P. 72(b)(2). The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (quoting *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983)). *See also Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error).

DATED this 12th day of November, 2026.

Respectfully submitted:

s/Christopher B. Brown
United States Magistrate Judge